IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-00002-WYD

MATTHEW T. FANNIN,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits ["DIB"] and for supplemental security income ["SSI"] payments.  For the reasons stated below, this case is reversed and remanded for further fact finding.

I.    <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff applied for DIB and SSI in November 2006, alleging disability beginning on March 23, 2006, due to a shoulder injury from an accident and a learning disability. (Transcript ["Tr."] 88-93, 119-20.)  After his applications were denied initially, Plaintiff timely requested a hearing (*id.* 69), and a hearing was held in June 2008.  (*Id.* 25-59.) On October 8, 2008, the Administrative Law Judge ["ALJ"] issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act ["the Act"].  (*Id.* 11-24.)

Plaintiff was born in October 1979, was 26 years old on the alleged disability onset date, and was 28 years old at the time of the hearing. (Tr. 23.) He attended college intermittently and had worked in the past as a convenience store clerk, among other various jobs. (*Id.* 28-29, 45-46, 55.)

The ALJ found at step one of the decision that Plaintiff met the insured status requirements of the Act through December 31, 2011. (Tr. 13, Finding 1.) She also found that Plaintiff had not engaged in substantial gainful activity since March 23, 2006 (his alleged onset date). (*Id.*, Finding 2.)

At step two, the ALJ found that Plaintiff had the following severe impairments: "history of head injury and left proximal humerus fracture with residual shoulder pain and shoulder girdle weakness (status post motor accident/post surgery), cognitive disorder NOS, and attention deficit disorder" ["ADD"]. (Tr. 14, Finding 3.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria listed at 20 C.F.R., Pt. 404, Subpt. P, App. 1. (*Id.* 14-16, Finding 4.)

The ALJ then determined that Plaintiff retained the residual functional capacity ["RFC"] to perform light work, except that he could occasionally lift overhead with his left arm; stand or walk six hours in an eight-hour work day; and perform jobs with a specific vocational preparation ["SVP"] rating of level of three or below. (Tr. 16-22 and Finding 5.) Based on the vocational expert's testimony, the ALJ found at step four that Plaintiff could not perform his past relevant work as a convenience store clerk. (*Id.* 22, Finding 6.)

At step five, the ALJ found that Plaintiff could perform other jobs that existed in the national economy such as collator operator, companion, and film developer. (*Id.* 23-24, Finding 10.)  Therefore, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy and was not disabled. (*Id.* at 24, Finding 11.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.)  This appeal followed, and Plaintiff timely requested judicial review.  This Court has jurisdiction to review the final decision of the Commissioner under the Act, 42 U.S.C. § 405(g).

II.   ANALYSIS

A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for

-3-

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.    Whether the ALJ's Decision Is Supported by Substantial Evidence

Plaintiff challenges the ALJ's failure at step two to determine whether his alleged back impairment is severe; her assessment of Plaintiff's RFC, including the ALJ's evaluation of his treating physician's opinion and his credibility; and the ALJ's hypothetical question to the vocational expert ["VE"]. The Commissioner maintains that Plaintiff is not disabled, and that the ALJ's findings are supported by substantial evidence and free of reversible legal error. I address Plaintiff's arguments below.

      1.    Whether the ALJ Erred at Step Two

Plaintiff argues that the ALJ erred at step two in failing to include his thoracic and cervical spine condition in the list of his severe impairments. Plaintiff asserts that the ALJ's decision did not even note that he had problems in his spine, much less make a finding that it was not severe. Plaintiff argues that this is error, as the medical records document problems with his cervical and thoracic spine as a result of a rollover car accident in March 2006 whereby he was ejected from the vehicle. (Tr. 178, 259.)

I agree that the medical records document problems with Plaintiff's spine. MRIs taken of both areas of his spine after the accident showed the existence of such problems. The MRI of the cervical spine dated March 23, 2006, showed a small focal disk protrusion centrally located at C6-7 without cord compression. (Tr. 240.) The MRI of the thoracic spine showed an acute wedge compression fracture involving the superior endplate of T10 with mild loss of the vertebral body height. (*Id.* 239.) Also,

Plaintiff complained of continuing pain in his neck and back throughout his treatment. (*See, e.g.*, 35, 376, 364, 350-345.)

The ALJ acknowledged that Plaintiff alleged that he "experienced left shoulder and lower back pain around the clock everyday." (Tr. 17, 18.)  More importantly, she acknowledged that Plaintiff has diagnosed shoulder *and* back problems.  (*Id.* 18). Nonetheless, she ignored the back problems at step two and made no finding as to their severity.  I find that this is error that must be corrected on remand.

At step two, the agency determines whether the claimant's alleged impairment(s) are "severe." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *1 (10th Cir. Dec. 8, 2004) (unpublished)[1] (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii)(c); 416.920(a)(4)(ii)(c)). "'An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1521(a); 416.921(a)).  "Only 'slight' impairments, imposing only a 'minimal effect on an individual's ability to work' are considered 'not severe.'" *Id.*

"In light of these definitions, case law prescribes a very limited role for step two analysis." *Lee*, 2004 WL 2810224, at *2.  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352

---

[1]  I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case.  10th Cir. R. 32.1(A).

(10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

In this case, not only did the ALJ acknowledge that Plaintiff had diagnosed back problems, she also noted that Plaintiff had to stop working as a supervisor of survey workers because he could not keep up the pace due to his impairments.  Further, Plaintiff testified that he was unable to sustain his job in the work-study program he was involved with at Pikes Peak Community College due to his high pain levels and the fact that he missed too much work because of his pain and medications taken to control same.  (Tr. 43-44.)  Plaintiff's girlfriend, Sabrah Collar, whose testimony the ALJ gave "some weight to" (*id.* 22), provided a third-party function report regarding Plaintiff.  She noted that Plaintiff had problems bending and couldn't sit at a computer very long.  (*Id.* 128-135.)  This evidence provides support for Plaintiff's argument that his back problems, in addition to his other impairments, may be impacting his ability to do basic work activities.  Accordingly, the ALJ should have made a severity finding as to Plaintiff's back impairment.

The Commissioner argues, however, that Plaintiff did not list back pain as an impairment in connection with the application.  This argument is without merit, however, since the ALJ acknowledged the existence of diagnosed back problems.  The ALJ has a duty to fully and fairly develop the record as to material issues", which duty is heightened where the claimant, as here, was unrepresented before the ALJ.  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006); *Baca v. Dept. of Health & Human Servs.*,

5 F.3d 476, 479-80 (10th Cir. 1993).  In other words, when the ALJ considers an issue

that is apparent from the record, such as the back problems she noted, she has a duty

of inquiry and  factual development with respect to that issue.  *Maes v. Astrue*, 522 F.3d

1093, 1097 (10th Cir. 2008).

The Commissioner also argues that any error was harmless since the ALJ

considered the combined effects of all of Plaintiff's impairments, including pain, at later

steps, citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  While normally

the error may be harmless if the impairments are addressed at later steps (*id.*), this is

not the case here.

The ALJ stated that the RFC accommodates Plaintiff's residual left shoulder pain

by limiting overhead lifting to no more than occasionally; and accommodates his mental

impairments, medication side effects, and pain problems with resulting limitations on his

concentration, persistence and pace by limiting him to jobs with SVP ratings of three or

less (ie., lower-level semi-skilled jobs or unskilled jobs that can be learned in three

months or less)."  (Tr. 22).  This shows that the ALJ only took into account his shoulder

pain, and did not factor in Plaintiff's thoracic or cervical spine problems and pain or how

those problems affected Plaintiff's ability to work.  Accordingly, I find that the error was

not harmless in this case.  *See Martinez v. Apfel*, No. 08-2008, 2008 WL 3410092 (10th

Cir. Aug. 13, 2008) (unpublished) (holding that an ALJ's failure to make specific findings

about the severity of a claimant's alleged impairments at step two was harmless error

as the ALJ discussed in detail the effect of each alleged impairment at other steps but

noting that the argument might have merit if the ALJ had failed to discuss the

impairments at any other step in the sequential evaluation process); *Coffman v. Astrue*, No. 10-2668-CM, 2011 WL 4436611, at *3 (D. Kan. Sept. 23, 2011) ("an error at step two may not be harmless if it affects the ALJ's findings at steps four and five")(citing *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010)).

Based upon the foregoing, the ALJ is directed on remand to determine whether Plaintiff's back problems as noted in the record are severe at step two.  She must also keep in mind on remand that the combined effect of all of the claimant's impairments must be considered without regard to whether any such impairment, if considered separately, would be of sufficient severity.  *Carpenter*, 537 F.3d at 1123-24 (quoting 20 C.F.R. § 404.1523) (internal quotation marks omitted).

> 2.    Whether the ALJ Erred in Regard to the RFC and Weighing the Medical Evidence

Plaintiff argues that the RFC adopted by the ALJ was not based upon substantial evidence in the record, and that the ALJ failed to properly weigh the opinion of his treating physician.  Plaintiff also asserts that the ALJ erred in finding that he can perform light work with only occasional limitations regarding reaching overhead with his left upper extremity.  Accordingly, Plaintiff contends that the ALJ failed to pose a complete hypothetical question to the VE.[2]

As to the medical evidence relevant to the RFC, Dr. Greg Unruh, Plaintiff's treating and primary physician, opined on this issue.  He opined that Plaintiff could rarely lift less than ten pounds, could not reach either in front of him or overhead with

---

[2]  I address only the physical RFC since Plaintiff has not appealed any findings related to his mental RFC.

his left arm, and was expected to need eight unscheduled breaks of fifteen minutes apiece throughout the day.  He also opined that Plaintiff would be expected to miss more than four days of work per month as a result of his impairments or treatment.  (Tr. 304-307).

Plaintiff was also seen by Dr. Ross Hansen for a consultative examination. Dr. Hansen opined that Plaintiff should be able to sit with no restrictions throughout an eight hour workday, could lift and carry 20 pounds frequently and 50 pounds occasionally, and has no postural limitations.  (Tr. 263).  He also opined, however, that Plaintiff has "manipulative limitations in the fact that he should not be reaching out for objects, especially above the level of his chest or shoulders."  That is because Plaintiff "has diminished strength in the left shoulder girdle and the higher he elevates his shoulder, the weaker and more dangerous this would become."  (*Id.*)  Thus, Dr. Hansen opined that Plaintiff "in a workplace environmental situation should not be asked to lift upward or above the level of his chest or shoulders."  (*Id.* 264.)

Finally, a physical RFC assessment was completed by Dr. K. Steinhardt, a state agency physician who never examined the Plaintiff.  Dr. Steinhardt opined that Plaintiff could frequently lift 25 pounds and occasionally lift 50 pounds, could sit about 6 hours in an 8-hour workday, could occasionally crawl and never climb ladder/rope/scaffolds, and that Plaintiff should never reach overhead with his left upper extremity.  (Tr. 265-272.)

As noted above, the ALJ found that Plaintiff retained the RFC to perform light work, except that he could occasionally lift overhead with his left arm; stand or walk six

hours in an eight-hour work day; and perform jobs with an SVP level of three or less. (Tr. 16-22, Finding 5.)  As grounds for the RFC, the ALJ stated that she gave "great weight" to the Physical RFC Assessment of state agency physician Dr. Steinhardt and to the opinion of consultative examiner Dr. Hansen (Exhibits 6F and 7F), although she concluded that Plaintiff's ability to lift/carry is somewhat more diminished by his impairments than those doctors found.  (Tr. 22.)  Thus, the ALJ limited Plaintiff to light rather than medium work.  (*Id.*)  The ALJ gave some weight to the opinion of Plaintiff's girlfriend, and "little weight" to the opinion of treating physician Dr. Unruh.  (*Id.*)

I find reversible legal error with regard to the ALJ's RFC assessment.  I first address the ALJ's decision to give "little weight" to the opinion of the treating physician. The Commissioner argues that the ALJ reasonably discounted Dr. Unruh's "very restrictive opinion", and gave a number of specific, legitimate reasons for her decision. (Def.'s Resp. Br. at 12.)  This argument fails to acknowledge the fact that the ALJ was still required to conduct a proper analysis as to whether Dr. Unruh's opinion should be deemed controlling.

Specifically, under Tenth Circuit law, "the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR)", the ALJ is required to "complete a sequential two-step inquiry" in regard to medical opinions of a claimant's treating physician, "each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, *i.e.*, is to be accorded 'controlling weight,' on the matter to which it relates."  *Id.*

Here, the ALJ never discussed the issue of controlling weight. Instead, she found that "the longitudinal treatment record of claimant by Dr. Unrah, consisting primarily of conservative treatment protocols (Exhibit 12F), does not justify the severe restrictions included in Dr. Unrah's proposed RFC (Exhibit 11F)." (Tr. 22.) This is not, however, a proper determination as to whether an opinion is entitled to controlling weight. Instead, "[c]ontrolling weight must be given to a treating physician's opinion regarding the nature and severity of an impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 WL 374188, at *3 (1996). This requires that the ALJ first undertake an inquiry into the clinical signs, laboratory findings, and medical bases used by the treating physician. *Id.* Because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated, the ALJ may not substitute her own speculation or lay opinion, but must undertake a medically-based inquiry into "what the clinical signs and laboratory findings signify." SSR 96-2p, 1996 WL 374188, at *3.

In this case, by the time Dr. Unruh became Plaintiff's treating physician, Plaintiff had already undergone a total shoulder arthroplasty and resulting physical therapy, and MRIs and other tests showed the existence of Plaintiff's impairments. Plaintiff's impairments are thus documented through objective medical evidence. The ALJ ignored that evidence, and did not actually conduct an inquiry into what clinical signs or

laboratory findings existed to support Dr. Unrah's opinion.  That constitutes reversible error that must be corrected on remand.

Further, the fact that Dr. Unruh chose conservative treatment protocols over his three years of treatment of Plaintiff is an improper basis to reject Dr. Unruh's opinion. There are no suggestions or findings from any of Plaintiff's other doctors that more aggressive treatment could be provided.  There is also no evidence to this effect from either consultative examiner Dr. Hansen or state agency physician Dr. Steinhardt.  The ALJ thus erred in making speculative inferences about what Dr. Unruh's treatment means and/or improperly attempting to substitute her judgment for that of the doctor's. *See Langley*, 373 F.3d at 1121 ("'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion.'") (emphasis in original and quotation omitted).

The ALJ also found, however, that Dr. Unrah's "restrictions run contrary to the great weight of credible medical evidence of record."  (Tr. 22.)  While this is an issue relevant to the controlling weight issue, the ALJ does not state what other "credible medical evidence of record" she is referring to.  Since she did not take testimony from any medical experts at hearing, I presume that the ALJ is relying on the opinion of consultative examiner Dr. Hansen, as he is the only other doctor who examined Plaintiff

that found different restrictions than Dr. Unrah.  (*Id.* 259-64.)[3]  However, "'[w]hen a

treating [source's] opinion is inconsistent with other medical evidence, the ALJ's task is

to examine the other [sources'] reports to see if they outweigh the treating [source's]

report, not the other way around.'"  *Valdez v. Barnhart*, No. 01-1531, 2003 WL 366751

at *2 (10th Cir. Feb. 20, 2003) (unpublished) (quoting *Goatcher v. United States Dep't of

Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).  The ALJ appeared to do

the opposite in this case.  Further, the ALJ first had to determine whether treating

physician Dr. Unrah's opinion was entitled to controlling weight before she could

determine what weight, if any, to give to the opinion of a consultative examiner.

    I also note that the ALJ selectively picked out portions of Dr. Unruh's records to

show that Plaintiff was doing better or continuing to improve in terms of pain despite his

impairments.  (Tr. 19-20.)  While it does appear that medical marijuana helped Plaintiff,

the records are replete with documentation of Plaintiff's ongoing pain and attempts to

control the pain in regard to Plaintiff's impairments.  The Tenth Circuit has made it clear

that an ALJ may not engage in a selective evidentiary review, "selectively choosing from

the record those statements [s]he wished to rely on without properly considering all the

---

        [3]  The opinion of state agency physician Dr. Steinhardt does not provide additional support for the
ALJ, since he relied on the consultative opinion of Dr. Hansen in support of his opinion.  (Tr. 266.)  Indeed,
opinions of a nonexamining doctor "must 'themselves find adequate support in the medical evidence".
*Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004) (unpublished).  Further,
Dr. Steinhardt's opinion was made in a check-mark form that was not accompanied by a thorough report.
Such forms, standing alone and "unaccompanied by thorough written reports or persuasive testimony", are
insufficient to support the RFC determination.  *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); *see
also Baker v. Barnha*rt, No. 03-7041, 2003 WL 22905238, at *3 (10th Cir. Dec. 10, 2003) (unpublished) (A
few handwritten notes from the medical evidence and a statement that the assessment is based on the
medical evidence does not constitute a "thorough explanation" and the RFC assessment thus does not
constitute substantial evidence to support the ALJ's finding.").

evidence. . .". *Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999) (unpublished) (citing cases).

Based on the foregoing, I find that the reasons the ALJ gave to reject Dr. Unruh's opinion are not valid. The Tenth Circuit has made clear that "an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'" *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted).

I also note that "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. "If this is not done, a remand is required." *Id. Krauser* cited the relevant ruling, which explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to 'controlling weight', not that the opinion should be rejected.* Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4) (emphasis added). Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to

give the opinion, it does not resolve the latter, distinct inquiry." *Id.* (emphasis in original).

In *Krauser*, the Tenth Circuit found that the ALJ's assessment of a treating physician's opinion was "patently inadequate for the distinct reason that it ends halfway through the required two-step analysis:  the ALJ simply concluded that 'Dr. Lambert's opinion ... cannot be given controlling weight' and then *said no more about it." Id.* (emphasis in original).  Here, however, the ALJ did not determine at the first step whether Dr. Unruh's RFC assessment or other medical findings, in whole or in part, are entitled to controlling weight, let alone make a second step determination.  Once she found that Dr. Unruh's opinion was not well supported or contrary to the other medical evidence, she simply discounted the opinion rather than giving the opinion deference and determining what lesser weight should be given to the opinion using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  While the ALJ stated that she gave Dr. Unruh's opinion "little weight", it appears that she gave it no weight.

I also find that the ALJ committed reversible error in that she did not even include the limitations that Dr. Hansen and the state agency examiner found and whose opinions she purported to give great weight to.  Specifically, both Drs. Hansen and Steinhardt found that Plaintiff was limited in his upper extremities.  (Tr. 266.)  Thus, Dr. Hansen found that Plaintiff "should not be asked to lift upward or above the level of his chest or shoulders." (Tr. 264.)  Dr. Steinhardt opined that Plaintiff should never reach overhead on the left.  (*Id.* 268.)  The ALJ found, however, that Plaintiff could occasionally lift overhead with his left arm.  This finding is erroneous, as the ALJ did not

cite to any evidence that supported that finding, and I have find nothing in the record to support it. *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) ("it is axiomatic that all of the ALJ's required findings [including the RFC] must be supported by substantial evidence"; SSR 96-8p, 1996 WL 374184, at *7 (1996) (directing that the RFC "must include a narrative discussion describing how the evidence supports each conclusion").  Further, since this RFC finding is directly contrary to the opinions of the doctors that she gave "great weight" to, the ALJ erred because she may not "'pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265 (quotation omitted).

My finding that Dr. Unruh's opinion and findings were not properly weighed will require a reassessment of the physical RFC on remand.  The ALJ must first determine what weight to give Dr. Unruh's opinion as a treating physician under the proper standard before she can determine what weight to assign the opinion of the consultative examiner or the other medical opinions in the case.  The ALJ should keep in mind that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson*, 366 F.3d at 1084.   Also on remand, the ALJ must take into account all of the medical findings in the case, including the restriction in connection with Plaintiff's upper extremities.

Finally, I find that the ALJ must reassess the hypothetical question and ensure that it contains all of Plaintiff's impairments.  Indeed, the hypothetical question given to

the VE in this case appears not to be proper since it did not include Plaintiff's upper extremity impairment.  Testimony from the VE in response to a hypothetical question that does not contain all of a claimant's impairments does not constitute substantial evidence to support the Commissioner's decision.  *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); *see also Wiederholt v. Barnhart*, No. 03-3251, 2005 WL 290082, *5 (10th Cir. Feb, 8, 2005) (unpublished) ("[b]ecause the ALJ omitted, without explanation, impairments that he found to exist . . ., the resulting hypothetical question was flawed").  Further, after reweighing the evidence, there may be other impairments that need to be included in the hypothetical question.

### 3.    Whether the ALJ Erred in Assessing Plaintiff's Credibility

Plaintiff also argues that the ALJ failed to properly evaluate his pain.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were found not to be credible to the extent they are inconsistent with the RFC assessment.  (Tr. 18.)  In making this assessment, the ALJ acknowledged that Plaintiff "undeniably has some pain and discomfort associated with his diagnosed shoulder and back problems. . .", but stated that the impairments were not inconsistent with the RFC.  (*Id.*)  The ALJ added that "[n]one of the symptoms/limitations (either singly or in combination) are sufficient to preclude [Plaintiff] from engaging in the types of jobs that meet the stipulations of [the RFC assessment]."  (*Id.*)

I find error with the ALJ's analysis.  First, as discussed above, the ALJ erred at step two in not determining whether Plaintiff's back impairments and pain were severe impairments.  Further, it is clear from the ALJ's decision that she did not take into account Plaintiff's back pain in connection with the RFC.  The ALJ has already been ordered on remand to assess Plaintiff's back impairments at step two and to reweigh and reassess the RFC.  I also order the ALJ to reassess Plaintiff's credibility as to pain.

20 C.F.R. § 404.1929(c)(3) and SSR 96-7p address the factors that should be considered, in addition to the objective medical evidence, when assessing a claimant's credibility.  These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medications, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In the case at hand, while the ALJ discussed many of the factors, she did not actually link her findings to the credibility finding.  For example, the ALJ stated that Plaintiff "has tried physical therapy, massage therapy, and other things but now he's just on medication therapy."  (Tr. 17.)  She noted that Plaintiff "has complications from his impairments and his medicines (trouble with his bowels, vomiting, etc)".  (*Id.*)  Further,

she noted that Plaintiff is currently taking several types of morphine "for long-term and breaktthough pain", "[m]orphine had the least amount of side effects, but it does cause confusion, stomach trouble, and fatigue", and that Plaintiff "has tried several different pain relievers". (*Id.*)  The ALJ further discussed the fact that medical marijuana prescribed by Plaintiff's doctor allowed him to lower his narcotic usage, but Plaintiff was unable to wean himself off narcotics completely as he is unable to sleep with the pain level. (*Id.* 18.)  Further, she noted that Plaintiff only sleeps only two or three hours a night on bad days when his pain medication "doesn't work." (*Id.*)  Finally, she noted Plaintiff's activities and what Plaintiff believes he can do in connection with the functional requirements of work.  (*Id.*)

Despite the above statements by the ALJ regarding the relevant factors, she then went on to find, without any attempt to link her finding to those factors, that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC assessment.  (Tr. 18.) She appeared to tie her credibility assessment solely to the RFC assessment and medical evidence (*id.* at 18-22), and not the other factors.  This is error.  *See Carpenter*, 537 F.3d at 1268 (finding that "[t]he ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects

from her pain medication").[4]  Further, the ALJ's finding that "[t]he claimant's testimony is not well supported by the objective medical evidence in the record" appears not be supported by substantial evidence, as there is ample evidence in the record documenting Plaintiff's pain and fatigue.

Based on the foregoing, I find that Plaintiff's credibility regarding both his pain and fatigue should also be reassessed on remand.  On remand, the ALJ must take into account that if she "finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994).  "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers.*'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted).  "A vocational expert is ordinarily required to determine what limitation . . . pain might impose on [Plaintiff's] ability to do . . . work.*" Harrison,* 1994 WL 266742, at *5.

III.   CONCLUSION

Based on the foregoing, I find that the ALJ did not properly weigh the treating sources' opinions as well as the other medical evidence.  This impacts the RFC finding and hypothetical question given to the VE, which must be reassessed after the medical evidence is properly weighed.  Finally, I find that the ALJ erred in evaluating Plaintiff's credibility.  Accordingly, I find that this case must be remanded to the Agency for further fact finding on these and the other issues discussed in this Order.  It is therefore

---

[4]  Thus, the Commissioner's argument that the ALJ tied her credibility finding to Plaintiff's daily activities or his statements about his limitations does not appear to be accurate.

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further fact finding pursuant to sentence four in 42 U.S.C. § 405(g).

Dated March 28, 2012

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge